# United States Court of Appeals
## for the
# Eleventh Circuit

JUDSON PANKEY,

*Plaintiff-Appellant,*

— v. —

AETNA LIFE INSURANCE COMPANY,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA IN NO. 6:23-CV-01119-WWB-UAM
(HONORABLE WENDY W. BERGER)

# APPELLANT'S REPLY BRIEF

GREGORY DAVID SWARTWOOD
THE NATION LAW FIRM
*Attorney for Plaintiff-Appellant*
570 Crown Oak Centre Drive
Longwood, Florida 32750
(407) 339-1104

*Attorney for Plaintiff-Appellant*
*Judson Pankey*

CP COUNSEL PRESS    (800) 4-APPEAL • [814422]

Case No.: 25-11338-TT
*Judson Pankey v. Aetna Life Insurance Company*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1, Appellee, Judson Pankey, respectfully submits the following Certificate of Interested Persons and Corporate Disclosure Statement:

Aetna, Inc. (Stock Ticker: AET)

Aetna Life Insurance Company (Stock Ticker: none known)

Berger, Wendy W., United States District Court Judge

Fordin, Jonathan, M., Esq.

Hartford Life and Accident Insurance Company (Stock Ticker: HIG)

Jones, Amy Wessel, Esq.

Kidd, Embry, J., Untied Staes District Court Magistrate Judge

Pankey, Judson

Shutts & Bowen LLP

Swartwood, Gregory D., Esq.

The Nation Law Firm, LLP

Case No.: 25-11338-TT
*Judson Pankey v. Aetna Life Insurance Company*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Judson Pankey, Appellant, need not make any corporate disclosures as he is not a corporation.

However, upon information and belief, Aetna Life Insurance Company (Stock Ticker: AET), Appellee, (or its parent company) is a publicly traded company or corporation and has an interest in the outcome of the case or appeal. Judson Pankey does not know Aetna Life Insurance Company's subsidiaries, conglomerates, affiliates, parent corporations, and/or any publicly held corporation(s) that own 10% or more of the Aetna Life Insurance Company's stock, and/or other identifiable legal entities related to Aetna Life Insurance Company. However, Aetna Life Insurance Company disclosed in the District Court the following entities:

Aetna, Inc.

Hartford Life and Accident Insurance Company – as an indemnity reinsurer of disability insurance issued by Aetna Life Insurance Company

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ....................................................C-1

TABLE OF AUTHORITIES ........................................................................ ii

ARGUMENT ..........................................................................................1

The District Court Erred In Concluding That Aetna's Termination
Of Disability Benefits Was Not Wrong And Arbitrary And
Capricious ......................................................................................1

    A.    Claimant Questionnaire ................................................1

    B.    Tax Returns ...............................................................3

CONCLUSION ......................................................................................7

CERTIFICATE OF COMPLIANCE ...........................................................8

CERTIFICATE OF SERVICE ..................................................................9

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Cooper v. Caldera,*
   96 F. Supp. 2d 1160 (D. Kan. 2000)...................................................................5

*Jackson v. Humphrey*,
   776 F.3d 1232 (11th Cir. 2015), *cert. denied*,
   577 U.S. 827, 136 S. Ct. 155, 193 L.Ed.2d 44 (2015)...........................................6

*Menge v. AT&T, Inc.*,
   Civil Action No. 11–cv–00728–PAB–KLM,
   2014 WL 1225002 (D. Colo. March 25, 2014) .....................................................5

**Statutes & Other Authorities:**

29 U.S.C. § 1132(c)(1)...................................................................................5

29 C.F.R. § 2560.503-l(g)(l)(i) .........................................................................5

29 C.F.R. § 2560.503-l(g)(l)(ii) ........................................................................5

# ARGUMENT

## The District Court Erred In Concluding That Aetna's Termination Of Disability Benefits Was Not Wrong And Arbitrary And Capricious

### A. Claimant Questionnaire

In Appellee's Answer Brief (11th Cir. Doc. 15), at 30 of 44, Aetna Life Insurance Company ("Aetna") states as follows:

> It is undisputed that Pankey failed to provide the updated Claimant Questionnaire, which required Pankey to disclose whether he had engaged in any work activity (including self-employment) since his disability's onset; whether he expected to be engaged in any work activity (including self-employment) in the future, and if so, the expected gross monthly earnings from such work activity; and the income he had received, was currently receiving, was expected to receive, or was eligible to receive. Rather, as part of the claim appeal, he merely provided an *outdated* Claimant Questionnaire from 2019, years earlier.

There is no evidence that the Claimant Questionnaire ("CQ") provided by Judson Pankey ("Pankey") was inaccurate. Admittedly, the CQ (the form was previously titled "LTD Employee Questionnaire") provided by Pankey was dated February 19, 2018. Doc 21-1, AR1140; A1162. However, it still confirms that he has no pension benefits, no work income but that he is getting Social Security Disability Income ("SSDI"). Pankey also provided a separate Other Income Questionnaire Disability Benefits form dated May 16, 2019 (Doc 21-1, AR1138; A1160) showing his absence of earnings from sources other than SSDI.

1

Moreover, in Pankey's appeal letter, attaching these documents and many others, he specifically stated that: "<u>Proof of Loss</u> Claimant received no earnings from working in 2020 or 2021 - refer to a copy of his SSA [Social Security Administration] Earnings Record dated January 4, 2023 (Exhibit 142)[1]. Doc 21-1, AR966; A988.

Before benefits were terminated, Aetna requested that Pankey complete a specific CQ form. Doc 21-1, AR709-715; A731-737 (June 21, 2021 letter); Doc 21-1, AR719-725; A741-747 (July 26, 2021 letter); Doc 21-1, AR729-735; A751-757 (December 9, 2021 letter) and Doc 21-1, AR749-755; A771-777 (May 2, 2022 letter). This form requested income information, but also various other types of information -- much of which was irrelevant as it dealt with the cause of his disability and his physical abilities. Aetna never disputed that he was disabled as a result of his hearing loss. Doc 21-1, AR756; A778 (July 15, 2022 termination letter "This is not a decision about whether you are disabled[2].").

Pankey did not complete this new CQ form. However, he did provide the financial information requested as detailed above (previous CQ and Other Income Questionnaire Disability Benefits form as well as Social Security Administration

---

[1] The Social Security Administration Earnings Record dated January 4, 2023 is at Doc 21-1, AR962-965; A984-987.

[2] Even now, Aetna acknowledges that Pankey was physically disabled. Appellee's Answer Brief (11th Cir. Doc. 15), at page 38 of 44.

Earnings Record dated January 4, 2023). It must be noted that the CQ is a form completed by Pankey. The form merely allows Pankey to tell Aetna what other forms of income he may be receiving. He did that, in writing, in his appeal letter and via the unchanged forms he submitted with the appeal.

**B.      Tax Returns**

In Appellee's Answer Brief (11th Cir. Doc. 15), at 31 of 44, Aetna also states that:

> Nor did he provide the requested tax documentation proving that, in 2020 and 2021, he had not engaged in any gainful activity that resulted in, or could be expected to result in, an income of more than 60% of his adjusted predisability earnings, despite repeated requests over nearly two years. Given Pankey's failure to submit continuing proof of loss, the decision to terminate his benefits had a reasonable basis and was not arbitrary.

Pankey's Opening Brief comprehensively addresses this matter, but one issue warrants additional argument.

As noted in Pankey's Opening Brief and above, the July 15, 2022 termination letter confusingly indicated that Aetna's termination decision was not about whether Pankey was "disabled" but then, according to Aetna, financial information was still needed to determine whether he met the "Test of Disability." Doc 21-2, AR3407; A3429. In Appellee's Answer Brief (11th Cir. Doc. 15), at 38 of 44, Aetna states that:

> When the entire letter is read in context, it is clear that this language was intended to communicate that Hartford did not question whether Pankey was *physically* disabled, but that further proof was needed to establish he still satisfied the LTD test of disability, which included an income component—i.e., that Pankey was unable to work in any gainful activity that resulted in an income of more than 60% of his adjusted predisability earnings. (emphasis in original)

To clarify its position in its Answer Brief, Aetna adds the adverb "physically" in front of "disabled" and even puts it in italics. Adding that adverb in the Answer Brief was a good idea. But that same language was not included in the July 15, 2022 termination letter. It is simply unreasonable to assume that a lay person, submitting his own administrative appeal, would understand this subtle, undescribed difference. It is difficult to understand even in the context of this litigation. Here, you have a termination letter indicating that Aetna's decision was not about whether Pankey was disabled, and then ultimately the final appeal decision finds that Pankey failed to provide documentation to support that he continued to meet the Test of Disability. Doc 21-1, AR792-793; A814-815 ("Based on our review, we have not received all the updated forms, and documentation (updated LTD claimant Questionnaire form, and the 2020-2021 Tax Returns/Schedule K-1 Form for confirmation of any business earnings) to determine your continued eligibility."). Because of the confusing language of the termination letter, at the very least, remand is appropriate.

Finally, Aetna argues that Pankey cites to ERISA regulation 29 C.F.R. § 2560.503-l(g)(l)(i) and (ii) in his Opening Brief and that to "the extent Pankey is suggesting there was a violation of those regulations, the Complaint does not allege such a violation" and therefore such an argument cannot be made here. Appellee's Answer Brief (11th Cir. Doc. 15) at 36-37 of 44. Aetna is incorrect. Pankey does not need to cite to specific ERISA regulations in his complaint. *Menge v. AT&T, Inc.*, Civil Action No. 11–cv–00728–PAB–KLM, 2014 WL 1225002, at *9 (D. Colo. Mach 25, 2014)(discussing an ERISA claim for penalties for failure to timely produce plan documents, the Court noted that "[t]hese statements [in the complaint] are sufficient to state a claim for violation of 29 U.S.C. § 1132(c)(1) and put defendants on notice of such claim, even though they do not cite the specific statute under which plaintiff seeks relief. *See, e.g., Cooper v. Caldera,* 96 F.Supp.2d 1160, 1164–65 (D.Kan.2000) (failure to "identify specific laws or regulations that defendant violated" was not failure to state a claim under notice pleading standard).").

As conceded by Aetna in the underlying action, the issue in the case is: "the limited issue raised in Plaintiff's Complaint—that is, whether the decision to terminate his LTD benefits **in July 2022**, based on Pankey's refusal to submit the proof-of-loss documentation as repeatedly requested since June 2021, was arbitrary and capricious []." Doc 26 at 3 of 20; A3525 (emphasis in original). What Aetna

asked for, and whether it did so clearly as required by the applicable regulations so that Pankey knew what to provide, is an integral part of deciding whether Aetna's decision was arbitrary and capricious.

It should also be noted that Aetna raised this same issue in the underlying action. Doc 28 at 4 of 70; A3553 (Aetna's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment). The district court's order granting Aetna's motion for summary judgment did not address Aetna's argument on this issue and Aetna did not cross appeal on this issue. Accordingly, Aetna cannot raise that issue now. *Jackson v. Humphrey*, 776 F.3d 1232, 1239-1240 (11th Cir. 2015), *cert. denied*, 577 U.S. 827, 136 S. Ct. 155, 193 L.Ed.2d 44 (2015)(a party that fails to cross-appeal cannot attack the underlying decree with a view to either enlarging its own rights or lessening the rights of its adversary).

# CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the Court reverse the district court's order granting Aetna's motion for summary judgment and enter and order granting summary judgment in favor of the Appellant.

Dated:  November 21, 2025

/s/ *Gregory D. Swartwood*
Gregory D. Swartwood, Esquire
Florida Bar No. 858625
The Nation Law Firm, LLP
570 Crown Oak Centre Drive
Longwood, FL  32750
Telephone:  (321) 3979775
Facsimile:  (407) 867-4845
E-mail:  gswartwood@nationlaw.com
Attorney for Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains a total of 1,384 words, excluding those parts exempted by 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ *Gregory D. Swartwood*
Gregory D. Swartwood, Esquire

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2025, the forgoing brief was served to the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to all counsel of record, who are CM/ECF participants.

*/s/ Jaquelyn Levesque*
Counsel Press
1011 East Main Street
Richmond, VA 23219
(804) 648-3664
jlevesque@counselpress.com

Filing and service were performed by direction of counsel